(No. 94971

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. BRIAN CUNNINGHAM, Appellee.

*Opinion filed October 7, 2004.*

James E. Ryan and Lisa Madigan, Attorneys General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers and Linda D. Woloshin, Assistant Attorneys General, of Chicago, and Renee G. Goldfarb, Kenneth T. McCurry, Veronica Calderon Malavia, Alan J. Spellberg and Heather Weiss, Assistant State's Attorneys, of counsel), for the People.

Dennis Doherty, of Chicago, for appellee.

JUSTICE GARMAN delivered the opinion of the court:

After a bench trial, defendant, Brian Cunningham, was convicted of possession of a controlled substance. 720 ILCS 570/402 (West 1998). The appellate court, with one justice dissenting, reversed, holding the evidence was insufficient to sustain the conviction. 333 Ill. App. 3d 1045. We allowed the State's petition for leave to appeal pursuant to Rule 315. 177 Ill. 2d R. 315. We now reverse the appellate court and affirm defendant's conviction.

## BACKGROUND

The evidence at trial consisted of the testimony of Officer David Pfest of the Chicago police department, followed by a stipulation. The stipulation established that the "narcotics *** testified to in this case" consisted of 2.9 grams of a chunky substance in a clear plastic packet that chemical analysis proved to contain cocaine. The State offered Pfest's testimony to establish defendant possessed the cocaine with the intent to deliver.

Pfest testified as follows. At about 12:30 a.m. on December 15, 1998, he was on patrol in plain clothes with a partner in a vehicle. In the 3800 block of Elston Avenue, near Leona's Restaurant, a white male citizen in

his late 20s or early 30s "flagged down" the vehicle. To the best of Pfest's recollection, the citizen was dressed in "blue jeans and just a t-shirt." The citizen informed Pfest that a man nicknamed "Gumby" was selling narcotics and that Pfest could arrange to buy narcotics from Gumby by calling a phone number the citizen provided.

After conferring with fellow officers and setting up surveillance, Pfest called the number the citizen gave him and asked to buy an "eight ball," which is an eighth of an ounce, or approximately 3.5 grams, of cocaine. A female responded by asking Pfest if he was Kevin from Elston by Leona's. Pfest said he was Kevin. The female told him Gumby was not there and to call back in 15 minutes. Pfest called back in 15 minutes. This time a male answered. Pfest again asked for an eight ball. The male replied that he needed to go home to get it, and that in 15 minutes he would pull up near Leona's and honk his horn.

Approximately 15 minutes later a station wagon arrived where Pfest was waiting near Leona's and the driver honked the horn. Pfest removed his radio from his pocket and used it to tell fellow officers that the suspect had pulled up. He then approached the station wagon. As he did, he saw defendant in the driver's seat holding a clear plastic baggie containing a yellowish white substance. When Pfest got within about four feet, defendant appeared to recognize Pfest. Pfest had seen defendant before and may have arrested him on a prior occasion. Defendant's eyes widened and he looked down the street in the direction of approaching police cars. Defendant then threw the baggie to the floor of the car. Pfest ordered defendant out of the car and arrested him. Another officer seized the baggie.

Pfest could not recall who was his partner that evening. Nor could he recall on whose phone he made the two calls to Gumby. The trial court found Pfest's

testimony lacked "corroboration" and thus was insufficient to prove intent to deliver. However, the court found the testimony sufficient to prove the lesser-included offense of possession. The appellate court reversed, finding that the "whole scenario as described by Officer Pfest [is] *** unworthy of belief." 333 Ill. App. 3d at 1050. The court based this finding on specific parts of the testimony that it found incredible. The State contends it was error for the appellate court to review Pfest's credibility at all.

We granted leave to appeal to consider the State's argument that the fact finder's determination that a witness is credible is conclusive. For reasons that follow, we reject the State's argument. Nevertheless, we reverse the judgment of the appellate court because we find the record evidence sufficient under the standard of review.

## ANALYSIS

The due process clause of the fourteenth amendment to the United States Constitution requires that a person may not be convicted in state court "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 375, 90 S. Ct. 1068, 1073 (1970). When a court reviews a conviction to determine whether the constitutional right recognized in *Winship* was violated, it must ask "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89 (1979). In other words, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789. We have adopted the *Jackson* formulation of the standard of

review for claims that the evidence was insufficient to sustain a conviction. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The *Jackson* standard applies in all criminal cases, regardless of the nature of the evidence. *People v. Pollock*, 202 Ill. 2d 189, 217 (2002).

The State argues that, under the *Jackson* standard, the fact finder's determination that a witness is credible is conclusive. The State points out that *Jackson* requires a reviewing court to view the evidence in the light most favorable to the prosecution, and argues that this requirement precludes reviewing the credibility of witnesses. The State argues that reading a cold transcript cannot justify disbelieving testimony the fact finder actually heard and has accepted. We disagree.

As a threshold matter, defendant argues that the State has forfeited its claim that the trial court's credibility determination is conclusive. The State did not raise that claim in the appellate court. Defendant's argument has no merit. When the appellee in the appellate court appeals to this court, it " 'may raise any question properly presented by the record to sustain the judgment of the trial court, even though those questions were not raised or argued in the Appellate Court.' " *People v. Schott*, 145 Ill. 2d 188, 201 (1991), quoting *Mueller v. Elm Park Hotel Co.*, 391 Ill. 391, 399 (1945).

Turning to the State's argument, we begin with the fact that *Jackson* requires reviewing courts to "determine whether the record evidence could *reasonably* support a finding of guilt beyond a reasonable doubt." (Emphasis added.) *Jackson*, 443 U.S. at 318, 61 L. Ed. 2d at 573, 99 S. Ct. at 2788-89. It follows that where the finding of guilt depends on eyewitness testimony, a reviewing court must decide whether, in light of the record, a fact finder could reasonably accept the testimony as true beyond a reasonable doubt. In conducting this inquiry, the reviewing court must not retry the defendant. *People v. Smith*,

185 Ill. 2d 532, 541 (1999). The reviewing court must carefully examine the record evidence while bearing in mind that it was the fact finder who saw and heard the witness. *Smith*, 185 Ill. 2d at 541. Testimony may be found insufficient under the *Jackson* standard, but only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt. See, *e.g.*, *Smith*, 185 Ill. 2d at 545 (holding that no reasonable person could find the witness' testimony credible); *Schott*, 145 Ill. 2d at 206-07 (holding that complaining witness so lacked credibility that a reasonable doubt of defendant's guilt remains). However, the fact a judge or jury did accept testimony does not guarantee it was reasonable to do so. Reasonable people may on occasion act unreasonably. Therefore, we reaffirm that the fact finder's decision to accept testimony is entitled to great deference but is not conclusive and does not bind the reviewing court. See *Smith*, 185 Ill. 2d at 542.

Certainly, as the State emphasizes, the reviewing court must view the evidence "in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789. This means the reviewing court must allow all reasonable inferences from the record in favor of the prosecution. However, a reviewing court may not allow unreasonable inferences. See *Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789 (stating that the standard of review "gives full play to the responsibility of the trier of fact \*\*\* to draw *reasonable* inferences from basic facts to ultimate facts" (emphasis added). It follows that if only one conclusion may reasonably be drawn from the record, a reviewing court must draw it even if it favors the defendant.

Turning to Pfest's testimony, we find three instances where the only reasonable conclusion from the record is that a particular statement remains subject to question.

First, Pfest stated he spoke to a citizen on the street who was wearing jeans and only a T-shirt. We may notice, as commonly known facts, that mid-December nights in Chicago are usually cold, and that people usually do not go outside in the cold dressed only in a T-shirt. See *People v. Tassone*, 41 Ill. 2d 7, 12 (1968) (stating courts may notice matters of common knowledge). There is no record evidence that could reasonably explain why this citizen was wearing just a T-shirt on the night in question. There are, of course, many possible explanations. Perhaps the night was unusually warm or the citizen unusually tolerant of cold, for example. However, none of these possibilities is supported (or refuted) by the record. Therefore the only reasonable inference *from the record* is that Pfest's statement that the citizen wore just a T-shirt remains subject to question.

Second, Pfest's statement that the citizen "flagged [him] down" is likewise subject to question. Pfest was in plain clothes. The record is silent about whether Pfest was patrolling in an unmarked car, but the only reasonable inference is that he was, because he was in plain clothes. No record evidence reasonably explains how the citizen knew Pfest was a police officer. Pfest testified he did not know the citizen. Again, many explanations are possible but, adhering to the record, the only reasonable inference is that Pfest's statement that the citizen flagged him down remains subject to question.

Third, questions remain about Pfest's statement he used his handheld radio to speak to other officers after defendant pulled up in the station wagon. Nothing in the record reasonably explains why an officer with 10 years of experience would have done so in sight of a suspected drug dealer during an undercover drug buy. For example, there is no record evidence that Pfest was waiting in the shadows or in some other place the driver of the station wagon could not see. Again, adhering to the record, we

find the only reasonable conclusion is that questions remain about this statement.

Regarding other parts of Pfest's testimony mentioned by the appellate court, we agree with the dissenting justice and find no grounds in the record to question them. See 333 Ill. App. 3d at 1051-52 (Greiman, J., dissenting). Pfest's statement that he ordered an eighth of an ounce of cocaine, where the amount seized was somewhat less, is not questionable on review because record evidence reasonably explains the anomaly; Pfest explained that drug dealers commonly cheat their customers. Nor is there cause to question Pfest's testimony that the arrest occurred on December 15, while his report was dated December 14. Pfest testified that he began his shift on December 14, but the arrest occurred in the early morning of December 15. From those facts, one could reasonably infer he confused the dates when he wrote the report. Neither do we find questionable Pfest's testimony that he could not recall details such as the name of his partner on the night in question, or what phone he used to make the calls to Gumby, or the number he called. One could reasonably infer Pfest forgot these details, because the record shows the trial occurred some 22 months after the arrest, there is nothing especially memorable about these details, and there is no record evidence tending to show Pfest would be unlikely to forget them.

The conclusion that some statements in Pfest's testimony are questionable, of course, does not answer the ultimate question before us. Defendant's conviction for possession of a controlled substance rests in the first instance on Pfest's statements that defendant was holding the baggie containing cocaine, and that he threw the baggie to the floor of the car after he appeared to recognize Pfest. The question is whether a fact finder could reasonably accept those statements as proof beyond

a reasonable doubt, in spite of questions remaining about other parts of Pfest's testimony.

The appellate court inferred that the "whole scenario as described by Officer Pfest [is] *** unworthy of belief." 333 Ill. App. 3d at 1050. We disagree. First, it is important to bear in mind that the above analysis reveals unresolved questions about certain statements Pfest made, but it in no way proves those statements are lies or errors. Moreover, even when a witness is found to have knowingly given false testimony on a material point, a fact finder may reject his entire testimony but is not bound to do so. *Swift & Co. v. Industrial Comm'n*, 52 Ill. 2d 490, 495 (1972). See also *Sparling v. Peabody Coal Co.*, 59 Ill. 2d 491, 498-99 (1974) (stating that even "contradictory testimony of a witness does not per se destroy [his credibility], and it remains for the trier of fact to decide when, if at all, he testified truthfully"). In other words, it is for the fact finder to judge how flaws in part of the testimony affect the credibility of the whole. Of course, for the reasons discussed above, the fact finder's judgment in that regard must be reasonable in light of the record. In some cases a reviewing court may find, after considering the whole record, that flaws in testimony made it impossible for any fact finder reasonably to accept any part of it.

For example, in *Schott* the complaining witness' testimony contradicted, at several points, her sworn testimony in a previous proceeding. The record also showed that she was an admitted liar who had a motive to falsely accuse the defendant. Because the record showed the witness to have been so thoroughly impeached, we held her testimony insufficient to convict. *Schott*, 145 Ill. 2d at 209.

The appellate court's decision in *People v. Quintana*, 91 Ill. App. 2d 95 (1968), provides another example factually closer to the case at bar. In *Quintana*, a police officer

testified he saw the defendant throw some packets under a car and that he thought the packets probably contained marijuana because marijuana is usually packaged that way. He was contradicted by the State's forensics expert, who testified the packets seized were unusual. Moreover, the record, through the defendant's testimony and the officer's own admission, showed the officer had been harassing and threatening the defendant in an effort to get the defendant to become an informant. *Quintana*, 91 Ill. App. 2d at 98. Thus the appellate court, in reversing the conviction, relied on the officer's motive to fabricate a charge against the defendant and not simply the fact he had been contradicted by another prosecution witness on a material point.

In this case, there is nothing in the record showing that the only reasonable inference is that the questionable parts of Pfest's testimony make the whole unworthy of belief. This is not a case, like *Schott* or *Quintana*, where the record showed the witness was a liar or had a motive to falsely accuse the defendant. Nor is this a case in which the witness' description of the actual crime was incredible on its face. See, *e.g.*, *People v. Coulson*, 13 Ill. 2d 290, 296 (1958) (stating that the complaining witness' testimony that armed robbers allowed him to go unaccompanied into his house to get more money, trusting his promise not to call the police, "taxes the gullibility of the credulous"). Where the record is not such that the only inference reasonably drawn from flaws in the testimony is disbelief of the whole, a reviewing court should bear in mind that the fact finder had the benefit of watching the witness' demeanor. See 333 Ill. App. 3d at 1052 (Greiman, J., dissenting). After considering all of the record evidence and viewing Pfest's demeanor, a fact finder could reasonably conclude beyond a reasonable doubt defendant was holding the baggie and threw it down when he realized police were approaching. That, along with the stipulation

that the substance in the baggie contained cocaine, is sufficient to support defendant's conviction.

## CONCLUSION

The adage that "one bad apple spoils the lot" does sometimes describe the relation between specific flaws in a witness' testimony and the credibility of the whole. In some cases, the record requires the inference from doubts about parts of testimony to doubt about the whole. In other cases, however, the adage does not apply because the record does not require the inference from part to whole. This case falls into the latter category. Despite the doubts about some parts of Pfest's testimony discussed above, the statements that directly support defendant's conviction for possession of the cocaine could reasonably be accepted by the fact finder, who saw Pfest testify, as true beyond a reasonable doubt. The judgment of the appellate court is therefore reversed, and the judgment of the circuit court is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*