2021 IL App (1st) 191090-U

No. 1-19-1090

Order filed December 20, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 12384 |
| | ) | |
| ALAN MAYWEATHER, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE COGHLAN delivered the judgment of the court.
Justices Pucinski and Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's convictions are affirmed over his contention that the State's case rested primarily on the insufficiently corroborated testimony of a narcotics addict and felon.

¶ 2    Following a bench trial, defendant Alan Mayweather was found guilty of aggravated robbery, aggravated battery on a public way, and unlawful restraint. He was sentenced to concurrent terms of six years' imprisonment for aggravated robbery and three years' imprisonment

for aggravated battery on a public way.[1] On appeal, defendant argues that the evidence was insufficient to support his convictions. For the following reasons, we affirm.

¶ 3 At trial, Alphonzo Walton testified that on August 2, 2018, at about 2 p.m., he was at a gas at 79th Street and King Drive when defendant, whom he knew from going to the same methadone clinic, approached him offering to sell some PlayStation video games. Walton left the gas station with defendant to "see what he had." As they turned right on Calumet Avenue, defendant pointed out a "young guy" on a porch approximately 15 feet away. Walton stopped walking because he had never seen the man before and had a "gut feeling that something was wrong."

¶ 4 As Walton was about to turn around, defendant pushed him to the ground with both hands, causing him to fall on his right arm and hip. When Walton attempted to get up, the unidentified man jumped down from the porch, slapped him with a pistol and said, "stay down mother f***." Walton saw defendant had a "black and clear" "gun." Defendant rummaged through Walton's pockets while the unidentified man held the pistol to his forehead. Defendant took Walton's cell phone, house keys, wallet, small bag, and about $580, and he and the unidentified man ran away.

¶ 5 Walton was unable to run due to prior hip replacement surgery, so he hopped towards the gas station. He saw his friend, yelled that he had been robbed, and used his friend's phone to call 911. When the police arrived, Walton explained what had happened and was instructed to file a report at the police station. He did not go to the police station immediately because he had to go home to care for his mother and sister. The next day, he gave police a "complete" list of the items that were taken from him and the location of his phone, which he had tracked on a computer.

---

[1] The trial court merged the unlawful restraint conviction into the aggravated robbery conviction at sentencing.

¶ 6    Walton identified a photograph of his cell phone at trial. He also identified a photograph of the taser defendant took from him, and the lineup form and photo he signed and circled at the police station. Walton acknowledged that he had three prior felony convictions (a 2012 narcotics conviction, a 2012 theft and 2007 retail theft).

¶ 7    On cross-examination, Walton testified that defendant's firearm was "[a]ll" black and acknowledged he never went to the hospital or photographed his injuries. He denied borrowing $200 from defendant, agreeing to pay him interest, or giving defendant his cell phone or anything else as collateral for a loan.

¶ 8    When Walton talked to Chicago police officer Dalrymple at the station, he named defendant as one of the offenders and told him where he possibly resided.  At an apartment building on 81st Street and LaFayette Avenue, Dalrymple and his partner saw a man matching Walton's description of defendant, who was subsequently detained and searched. A replica firearm, taser, Walton's cell phone, and a wallet containing miscellaneous cards were recovered from him. Dalrymple knew it was Walton's phone because it "lit up" when he called Walton's number. The replica firearm recovered from defendant was "silver, chrome," not black.

¶ 9    The audio 911 call that Walton made on August 2, 2018 at approximately 2:22 p.m. was admitted into evidence and played for the trial court. In the audio, Walton sounds upset and states he was robbed at gunpoint of his wallet and "everything" on 79th and King by two men. One offender is described as bald and wearing blue jeans and a blue shirt, and the other as having dreadlocks and wearing a white shirt and in his thirties. The dreadlocked offender had a firearm, and the other offender stayed in a building on 87th Street and went to the methadone clinic.

¶ 10    Defendant testified that in August 2018, he was staying in an apartment building he had been hired to clean out. While removing furniture and debris, defendant found a plastic silver replica handgun and a PlayStation game.

¶ 11    Defendant confirmed that he and Walton went to the same methadone clinic. Walton had previously asked defendant for money and he sometimes paid Walton to work at the apartment building. In March or April 2018, defendant lent Walton $200. Walton later paid defendant $150 and gave him his cell phone and taser as collateral until he repaid the rest of the money. Defendant admitted he had Walton's cell phone and taser on him when he was arrested, but denied robbing Walton at gunpoint.

¶ 12    On cross-examination, defendant stated that he ran into Walton at the gas station on August 2, 2018 and talked to him about selling "PlayStation Three cartridges." Walton was not interested in the items, and they "departed different ways." He was holding Walton's taser and cell phone on August 3, 2018 as collateral for money Walton owed him. Defendant initially told the police he bought the phone and the taser from someone on the street because on "[t]hat particular day [he] was kind of upset and [he] had been working all day. [He] was kind of confused on some of the things" he was being asked.

¶ 13    The trial court found defendant guilty of aggravated robbery, aggravated battery on a public way, and unlawful restraint. The court stated defendant and Walton knew each other from the methadone clinic, and Walton made a detailed complaint to police. Although Walton did not report "all he might have" immediately, he did so in a "timely enough fashion" the next day. Defendant was arrested with Walton's cell phone and a replica firearm, which corroborated Walton's testimony that defendant used a gun to take Walton's property by force.

¶ 14    Defendant filed an amended motion to reconsider or, in the alternative, a motion for a new trial alleging, among other things, that the trial court placed too much weight on Walton's testimony. The trial court denied defendant's motion and sentenced defendant to concurrent prison terms of six years for aggravated robbery and three years for aggravated battery on a public way. Defendant filed a motion to reconsider sentence, which was also denied.

¶ 15    On appeal, defendant challenges the sufficiency of the evidence, arguing his convictions are based on insufficiently corroborated testimony from a drug addict and convicted felon.

¶ 16    A reviewing court will not retry a defendant. *People v. Gray*, 2017 IL 120958, ¶ 35. When reviewing the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* It is the fact finder's responsibility to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts. *Id.* A reviewing court will not substitute its judgment for that of the fact finder on questions regarding the credibility of the witnesses or the weight of the evidence. *Id.* A criminal conviction will not be reversed for insufficient evidence unless "the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Belknap*, 2014 IL 117094, ¶ 67.

¶ 17    To prove defendant guilty of aggravated robbery, the State had to prove he committed a robbery by knowingly taking property from Walton by the use of force or threatening the imminent use of force (720 ILCS 5/18-1(a) (West 2018)), while indicating verbally or by his actions that he was presently armed with a firearm or other dangerous weapon. 720 ILCS 5/18-1(b)(1) (West 2018). Aggravated robbery may be found "even though it is later determined" that the offender

had no firearm or other dangerous weapon in his possession when he committed the robbery. *Id.* To prove defendant guilty of aggravated battery on a public way, the State had to prove that he knowingly caused bodily harm to Walton (720 ILCS 5/12-3(a)(1) (West 2018)) by means other than a firearm while he or Walton were on or about a public way. 720 ILCS 5/12-3.05(c) (West 2018).

¶ 18    Taking the evidence in the light most favorable to the State, it was sufficient to establish defendant committed aggravated robbery and aggravated battery on a public way. Walton testified that defendant pushed him to the ground on a public street, injuring his hip. This evidence was sufficient to establish defendant knowingly caused bodily harm to Walton on a public way. See *Gray*, 2017 IL 120958, ¶ 36 ("The testimony of a single witness is sufficient to convict if the testimony is positive and credible, even where it is contradicted by the defendant.").

¶ 19    Walton also testified that defendant threatened him with what appeared to be a firearm and another man slapped him with a firearm and held the weapon to his head while defendant took his phone, taser, and other belongings. The phone and taser were recovered from defendant when he was arrested, as was a replica firearm. This evidence was sufficient to show defendant knowingly took property from Walton by the use of force, while indicating through his actions that he was armed with a firearm.

¶ 20    Defendant argues that in addition to being a drug addict and felon, some of Walton's testimony was inconsistent with his statements to the police. In addition, Walton claims he was hit in the head and injured his hip yet never went to the hospital and had no visible injuries at the police station. He also testified defendant was armed with a black and clear firearm, but defendant was in possession of a silver replica firearm when he was arrested. After hearing the evidence and

considering the credibility of the witnesses, the court found Walton's testimony more credible than defendant's testimony. We will not substitute our judgment for that of the trier of fact on questions involving the weight of the evidence or credibility of the witnesses. *People v. Moody*, 2016 IL App (1st) 130071, ¶ 52.

¶ 21 The trial court was not required to accept defendant's version of events as among competing versions. *People v. Ortiz*, 196 Ill. 2d 236, 267 (2001). Nor was it "required to accept any possible explanation compatible with the defendant's innocence and elevate it to the status of reasonable doubt." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 229 (2009). The court was free to accept or reject all or part of Walton's testimony. *People v. Cunningham*, 212 Ill. 2d 274, 283 (2004) (even where a witness is found to have knowingly testified falsely on a material point, the trier of fact is not bound to reject his entire testimony).

¶ 22 We do not find that the inconsistencies in Walton's testimony "made it impossible for any fact finder reasonably to accept any part of it" such that the convictions should be reversed. *Cunningham,* 212 Ill. 2d at 283. While Walton did not initially testify defendant took his taser, he later clarified the taser was one of the stolen items, and defendant acknowledged the taser belonged to Walton. Similarly, the fact that defendant was arrested with Walton's cell phone is undisputed. And even though Walton testified that defendant had a black firearm, he was still arrested with a silver replica firearm, which looked like a real firearm.

¶ 23 As defendant points out, "habitual users of narcotics become notorious liars," and such evidence can cast serious doubt on the truth of their other testimony. (Internal citations omitted.) *People v. Herman*, 407 Ill. App. 3d 688, 705 (2011). Although drug use does bear upon a witness's propensity for deceit and capacity to observe, retain and relate information accurately, it does not

necessarily render the witness's testimony unworthy of belief. *Id.* The unreliability of testimony by a narcotics addict is for the trier of fact to determine. *Id.* at 705.

¶ 24     Defendant's convictions were supported by the physical evidence and the trial court found Walton more credible than defendant. *People v. Daheya*, 2013 IL App (1st) 122333, ¶ 76. We find nothing in Walton's testimony was "unreasonable, improbable, or unsatisfactory" enough to raise a reasonable doubt as to defendant's guilt. See *Gray*, 2017 IL 120958, ¶ 35.

¶ 25     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 26     Affirmed.