2022 IL App (1st) 192592-U

No. 1-19-2592

Order filed March 24, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 19 DV 75147 |
| RICCO DORR, | ) ) ) | Honorable Megan Goldish, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Reyes and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for domestic battery is affirmed where the evidence was
            sufficient to establish that he slapped his ex-girlfriend.

¶ 2    Following a bench trial, defendant Ricco Dorr was found guilty of one count of

misdemeanor domestic battery and sentenced to 210 days in Cook County Jail. On appeal,

defendant argues that the complaining witness's testimony at trial was so unsatisfactory that no

reasonable person could accept it as credible, and therefore he was not proven guilty beyond a

reasonable doubt. We affirm.

¶ 3 Defendant was charged with one count of misdemeanor domestic battery predicated on making intentional physical contact of an insulting or provoking nature by slapping his ex-girlfriend, Emily Garcia, on her face (720 ILCS 5/12-3.2(a)(2) (West 2018)), on September 5, 2019.

¶ 4 Prior to trial, the State filed a motion *in limine* to admit propensity evidence of domestic violence incidents involving defendant and Garcia. The court denied the State's motion as to a 2016 incident but allowed evidence of two incidents that occurred in 2019.

¶ 5 At trial, Garcia testified that she and defendant had dated from 2015 until June 22, 2019. Around 6 p.m. on September 4, 2019, defendant came to Garcia's apartment while she was home alone. Garcia had an "understanding" with defendant that he needed to remove his belongings from the home. They spoke for some time and eventually engaged in sexual activity. While sitting on the bed around 3:30 a.m., immediately after the sexual activity occurred, defendant slapped Garcia on the left side of her face with his right hand. Garcia dressed, left the room, and called the police. Defendant grabbed the phone from her and hung up. Ten to fifteen minutes later, the police arrived, spoke with Garcia and defendant, and arrested defendant. Garcia had no visible injuries, and the police suggested that it was not necessary to have a technician come out.

¶ 6 Garcia further testified that on June 30, 2019, she was pregnant with defendant's child, but lived separately from him. She was at home alone and defendant "barged in" and punched her left cheek. At the time, Garcia was considering an order of protection against defendant, and he was not to be around her. Garcia called the police, went to the hospital, and filed a police report. Defendant was arrested.

¶ 7    Garcia also testified that on January 17, 2019, she and defendant were at home watching TV. Garcia was uncertain whether defendant spoke to her or whether she was experiencing "psychotic episodes," but recalled that defendant stated that she "was the one threatening him." The situation became physical and defendant rolled on top of Garcia, grabbed a rag, and stuffed it in her mouth. Then, he shoved her head and she scratched him. Defendant barricaded her in the room for three days and took her phone, so she could not call the police. She eventually left the house with defendant, and when they returned, she called the police. Defendant was arrested, and the police documented Garcia's injuries. The State published photos of Garcia's face with scratches from the incident and entered the photos into evidence.

¶ 8    On cross-examination, Garcia testified that she had psychotic episodes in the past, but due to a miscarriage, she was not taking medication for her mental health on September 5, 2019, or at the time of trial. Garcia clarified that intercourse had not occurred, but that she and defendant had engaged in some form of sexual activity and defendant slapped her about 10 minutes after, while they were sitting on the bed and not facing one another. Defendant sat on her left, and no words were exchanged between the sexual activity and the slap. When the police arrived, they offered to call a technician and an ambulance, but there were no visible marks on her face, and they suggested that medical services were not necessary. Garcia testified that she did not specifically refuse medical treatment.

¶ 9    Chicago police officer Jamie Diaz testified that he and his partner arrived at Garcia's apartment a few minutes after receiving the call about a domestic disturbance on September 5, 2019. Diaz spoke to Garcia, who was upset, and his partner spoke with defendant. Defendant was

agitated and aggressive, and he screamed obscenities following his arrest and during his transport to the station.

¶ 10    On cross-examination, Diaz confirmed that the officers' report did not record that defendant was agitated and aggressive. Diaz did not see visible injuries on Garcia. On redirect examination, Diaz stated that he called an evidence technician in order to "make notification that [Garcia] refused" services.

¶ 11    The State entered certified copies of defendant's convictions that resulted from the incidents in January and June 2019 and rested.

¶ 12    Defendant moved for a directed finding, arguing that the State failed to meet its burden due to the discrepancies in Garcia's testimony, specifically regarding when the slap occurred and whether she had been offered medical help. Additionally, the defense argued that Garcia's description of her and defendant's positions during the slap appeared incompatible with her account of what happened. The trial court denied the motion.

¶ 13    After closing arguments, the trial court found defendant guilty of domestic battery. It stated that it found Garcia credible, citing her frankness and her ability to describe her and defendant's positions when he slapped her. The court noted that Garcia provided two different time frames for when the slap occurred, but that Diaz, who observed defendant and Garcia after the event, corroborated Garcia's account regarding "the timing and the nature of the incident." The court added that it "didn't really find [the propensity evidence] relevant."

¶ 14    Following a hearing, the trial court sentenced defendant to 280 days in Cook County Jail. Defendant then filed two motions: one for reconsideration of the guilty finding or, in the

alternative, for a new trial, and another to reconsider his sentence. The court denied the former motion but granted the latter and reduced defendant's sentence to 210 days.

¶ 15    On appeal, defendant argues that Garcia's testimony was insufficient to prove that he committed domestic battery. According to defendant, Garcia's descriptions of when the slap occurred, and her and defendant's positions at the time of the slap, are contradictory. Further, because Garcia has a history of psychotic episodes where she misunderstands a situation, and because she was not taking medication for this condition, her testimony was not credible.

¶ 16    The State maintains that it met its burden and that Garcia's testimony, as corroborated by Diaz, was sufficient to find defendant guilty of domestic battery.

¶ 17    In considering a challenge to the sufficiency of the evidence, this court examines " 'whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. Davison*, 233 Ill. 2d 30, 43 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This court will draw all reasonable inferences in favor of the State. *Id.* The trier of fact is responsible for weighing the evidence and credibility of witnesses and resolving any inconsistencies in testimony, and the reviewing court will not substitute its judgment on these issues. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009). A criminal conviction will not be overturned "unless the evidence is so unreasonable, improbable or unsatisfactory that it raises a reasonable doubt of defendant's guilt." *People v. Evans*, 209 Ill. 2d 194, 209 (2004).

¶ 18    Domestic battery occurs when a person knowingly and without legal justification makes physical contact of an insulting or provoking nature with any family or household member. 720 ILCS 5/12-3.2(a)(2) (West 2018). Family or household members include "persons who have or

have had a dating or engagement relationship." 720 ILCS 5/12-0.1 (West 2018). Defendant only challenges Garcia's credibility regarding whether he struck her.

¶ 19 Viewed in a light most favorable to the State, the evidence shows that on the evening of September 4, 2019, into the early hours of September 5, 2019, defendant visited Garcia, his ex-girlfriend, and after some time they engaged in sexual activity. Garcia testified that, afterwards, unprovoked, defendant slapped her. Garcia left the room and called 911, and within 10 to 15 minutes, officers arrived. The officers questioned defendant and Garcia, and then arrested defendant. The officers observed that Garcia was upset, and that defendant was aggressive and agitated while he was arrested and transported to the station. Taking this testimony as true, the trier of fact could find the elements of the offense beyond a reasonable doubt. See *People v. Gray*, 2017 IL 120958, ¶ 36 (the positive testimony of a single credible witness is sufficient to convict); *People v. Wrencher*, 2011 IL App (4th) 080619, ¶ 55 (whether conduct is insulting or provoking may be inferred from the victim's contemporaneous reaction to the contact).

¶ 20 Although Garcia testified on cross-examination that the slap occurred 10 minutes after the sexual activity, her initial testimony had been that it occurred immediately after. However, we will not reverse a conviction simply because the evidence is contradictory or defendant claims a witness was not credible. *Gray*, 2017 IL 120958, ¶ 36. The trier of fact is responsible for weighing the evidence and credibility of witnesses and resolving any inconsistencies in testimony. *Siguenza-Brito*, 235 Ill. 2d at 224-25. The trial court found Garcia credible and noted her frank and unembellished testimony and the specificity in which she described the events, including the positions she and defendant occupied when he slapped her. Garcia also discussed her history of mental health issues, and stated she was not on medication during the incident or trial. No

testimony or other evidence showed that Garcia's testimony was less credible because of her condition. The trial court noted that she was consistent, unambiguous, and able to describe the circumstances leading to the slap. Furthermore, the trial court acknowledged inconsistencies in her account, but determined that the testimony was credible overall based on its observations of the witness during her testimony. See *People v. Cunningham*, 212 Ill. 2d 274, 283 (2004) ("it is for the fact finder to judge how flaws in part of the testimony affect the credibility of the whole"). Additionally, the trial court found that Diaz's testimony corroborated Garcia's testimony regarding the timing and nature of the event.

¶ 21     It is the responsibility of the trial court to determine the credibility of witnesses, assign weight to the evidence, and resolve any inconsistencies in testimony. *Id.* Based on the record, nothing indicates that Garcia's testimony was so unreasonable, improbable, or unsatisfactory that it raised a reasonable doubt of defendant's guilt. As such, this court finds no reason to disturb the judgment of the trial court.

¶ 22     For these reasons we affirm the judgment of the circuit court.

¶ 23     Affirmed.