NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 180681-U

NO. 4-18-0681

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 23, 2020
Carla Bender
4ᵗʰ District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| KEVIN ORLANDO THORNTON, | ) | No. 18CF356 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott D. Drazewski, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Knecht and Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding (1) the State proved defendant guilty beyond a reasonable doubt, (2) the assistant state's attorney did not commit prosecutorial misconduct, (3) defendant did not receive ineffective assistance of counsel, and (4) the trial court did not err by refusing to appoint defendant new counsel.

¶ 2    In July 2018, a jury found defendant, Kevin Orlando Thornton, guilty of armed violence, a Class X felony (720 ILCS 5/33A-2(a) (West 2016)), and being an armed habitual criminal, a Class X felony (720 ILCS 5/24-1.7(a) (West 2016)). Between conviction and sentencing, defendant alleged trial counsel rendered ineffective assistance by failing to call two witnesses he believed could disparage the victim's credibility. Following multiple *Krankel* hearings (*People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984)), the trial court found defendant's claims lacked merit and declined to appoint new counsel. Defendant then opted to proceed *pro se* in the sentencing phase. After an October 2018 sentencing hearing, the trial court sentenced defendant to 18 years in the Illinois Department of Corrections (DOC) followed by 3

years' mandatory supervised release (MSR). Defendant filed various posttrial motions, which the trial court denied.

¶ 3        On appeal, defendant challenges his conviction on four grounds: (1) the State failed to prove him guilty beyond a reasonable doubt of armed violence; (2) the assistant state's attorney committed prosecutorial misconduct by misrepresenting evidence during closing arguments; (3) defense counsel rendered ineffective assistance by not moving to sever the occurrence offenses from the status offenses; and (4) the trial court erred by refusing to appoint defendant new counsel after several *Krankel* inquiries. We disagree and affirm the trial court's judgment.

¶ 4                                          I. BACKGROUND

¶ 5        On April 8, 2018, F.N. invited defendant to her apartment where they engaged in consensual sexual activity. When defendant asked F.N. to perform oral sex, she did not verbally answer yes or no; instead, she stood up and left the room. F.N. soon returned and found defendant sitting on a folding chair with a shirt covering his penis and right hand. She removed the shirt from defendant's lap and saw him holding a gun. She testified she "started crying. And I said, Oh, my Lord Jesus ***." As she backed away from defendant, he reassured her that he was not going to hurt her. But F.N. thought defendant "looked weird," so she "just ran, took off for [the] back door." As F.N. retreated, defendant grabbed her neck and arm, but she maneuvered him out the door. During the altercation, F.N. testified she said, "No. No. No. That's all I could say." With defendant now out of the apartment, F.N. locked the doors, called a family member, and then called the police.

¶ 6        When officers arrived at the scene, they found defendant nude and hiding in the indoor common area near F.N.'s apartment. One officer saw the handle of a gun poking out from

under a floor mat outside F.N.'s backdoor. Once inside the apartment, officers found a neoprene gun holster inside a gym shoe by a folding chair. The officers secured the scene, retrieved defendant's clothes from the apartment, and took him to a squad car for interrogation. Defendant denied knowing anything about the gun. He said he never had the gun and he saw F.N. messing with the floor mat. Meanwhile, F.N. provided police conflicting statements about that evening's events.

¶ 7        David Ashbeck, a crime scene detective in the Bloomington Police Department, processed and examined the gun found outside F.N.'s back door—a Smith & Wesson .38-caliber revolver. Ashbeck observed the gun was loaded with five rounds of ammunition. He swabbed the gun handle and trigger to collect deoxyribonucleic acid (DNA), but the State did not submit the swab for testing. Ashbeck found no fingerprints on the gun or the ammunition.

¶ 8        Based on the events of April 8, 2018, the State charged defendant by way of a bill of indictment with six counts: (1) attempt aggravated criminal sexual assault, a Class 1 felony (720 ILCS 5/8-4 (West 2016)); (2) attempt criminal sexual assault, a Class 2 felony (720 ILCS 5/8-4 (West 2016)); (3) unlawful possession of a weapon by a felon, a Class 3 felony (720 ILCS 5/24-1.1(a) (West 2016)); (4) intimidation, a Class 3 felony (720 ILCS 5/12-6(a)(1) (West 2016)); (5) armed violence, a Class X felony (720 ILCS 5/33A-2(a) (West 2016)); and (6) being an armed habitual criminal, a Class X felony (720 ILCS 5/24-1.7(a) (West 2016)). The State eventually dropped count I before trial and proceeded on the remaining counts.

¶ 9        Immediately before trial, however, defendant informed the trial court he believed his "attorney [was] providing [him] with ineffective assistance of counsel." Specifically, defendant alleged counsel was "not investigating the witnesses that I have provided to him that will testify to the last victim's drug use and credibility and believability." Defendant identified

the potential witnesses as Chad Wheeler and Carsell Jackson. Concerning Wheeler, defense counsel stated defendant gave him Mr. Wheeler's name the day before, so he had little time to consider Wheeler as a witness. Nevertheless, counsel decided not to call him as a witness for several reasons, including: Wheeler's attorney would not allow defense counsel to talk to Wheeler about drug use while he faced drug charges in a different case, Wheeler had no personal knowledge of the events on April 8, 2018, and even if Wheeler could testify, he would have to do so while wearing a jail jumpsuit. As for Jackson, defense counsel reported he learned about Mr. Jackson just the day prior as well. He gave the same reasons for not using Mr. Jackson as a witness: Jackson's attorney would not permit counsel to talk to him, Jackson had "minimal probative evidence," and Jackson would have to testify while wearing a jail jumpsuit. After hearing defendant's claims and counsel's responses, the court allowed defendant to confer with defense counsel in private to talk about the case. When they returned to the courtroom, defendant informed the court: "Me and Mr. Lewis we talked and we're fine and we want to proceed with trial as set." The court clarified, "So you want to keep the trial set for this coming Monday?" and defendant answered, "Yes, sir."

¶ 10          In its case-in-chief, the State presented testimony from F.N., officers who responded to the scene, and the crime scene detective. The State submitted various exhibits, including the recorded statement defendant gave police while sitting in the squad car. While cross-examining one of the officers, defendant introduced one exhibit, a video of F.N. giving a statement in the police cruiser. The defense then moved for a directed verdict on all counts, which the trial court denied. Defendant chose not to testify and the defense presented no evidence.

- 4 -

¶ 11　　　　During closing arguments, without objection from the defense, the State suggested the interactions between F.N. and defendant went awry after she "said no" to defendant's request for oral sex. The State asked for convictions on all counts. Defense counsel, by contrast, argued for acquittal because the victim's testimony was inconsistent and not credible. The jury found defendant guilty on all five counts.

¶ 12　　　　After the jury verdict but before sentencing, the defense submitted two posttrial motions. In July 2018, defense counsel filed a motion for judgment of acquittal notwithstanding the verdict, or in the alternative, motion for new trial, arguing the trial court committed several errors during the trial. In August 2018, defendant filed *pro se* a separate motion for a new trial, alleging defense counsel provided him ineffective assistance.

¶ 13　　　　The trial court held another *Krankel* hearing in September 2018, where defendant recounted many errors he believed defense counsel committed during trial, like answering "ready for trial" after only one day of preparation, not calling Wheeler or Jackson as witnesses, not tendering certain jury instructions, not impeaching F.N. on cross-examination, and stipulating defendant was an armed habitual criminal—among several other errors. Defense counsel responded to defendant's claims. After listening to defendant's complaints for more than 2 hours and 15 minutes, the court concluded defendant's claims lacked factual bases, labeling them "conclusory, misleading, [or] legally immaterial." Specifically, the court found no "neglect of the case on the part of [defense counsel] which would require that substitute counsel be appointed to represent [defendant] with respect to these allegations." The court then denied defendant's *pro se* motion for new trial and scheduled another hearing to consider defense counsel's motion for acquittal notwithstanding the verdict or for a new trial.

¶ 14        At the next hearing a few days later, the court heard arguments on defense counsel's motion and denied it. Yet again, defendant alleged he received ineffective assistance of counsel and requested to proceed *pro se*. After a brief *Krankel* inquiry, the court found "no basis to support [defendant's claim]" and said, "I am not proceeding to appointing different counsel to advance that issue to an evidentiary hearing." The court then admonished defendant on the right to counsel, the right to proceed *pro se*, and inquired into defendant's ability to represent himself. The court allowed defendant to act *pro se* from that point forward.

¶ 15        The trial court held a sentencing hearing in October 2018 where it reviewed the presentence investigation with defendant, who was still acting *pro se*. Defendant called two witnesses who testified to his good character. The trial court merged the five counts into two, the counts of armed violence and being an armed habitual criminal, and sentenced defendant to concurrent terms of 18 years in DOC for the armed violence conviction and 10 years for the armed habitual criminal conviction, followed by 3 years' MSR.

¶ 16        This appeal followed.

¶ 17                        II. ANALYSIS

¶ 18        Defendant argues: (1) the State failed to prove him guilty beyond a reasonable doubt of armed violence, (2) the assistant state's attorney committed prosecutorial misconduct, (3) defense counsel's failure to move to sever the status offenses amounted to ineffective assistance, and (4) the trial court erred in refusing to appoint new counsel after several *Krankel* inquiries. We disagree, taking each issue in turn.

¶ 19                  A. Proof Beyond a Reasonable Doubt

¶ 20        Defendant challenges his conviction for armed violence, arguing the State failed to prove him guilty beyond a reasonable doubt. Specifically, defendant contends the State failed to prove he communicated a threat of physical harm to F.N. We disagree.

¶ 21        "The due process clause of the fourteenth amendment to the United States Constitution requires that a person may not be convicted in state court 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *People v. Cunningham*, 212 Ill. 2d 274, 278, 818 N.E.2d 304, 307 (2004) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). When a defendant appeals his convictions, arguing the State failed to satisfy this burden of proof, a reviewing court will not retry the defendant but asks " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Cunningham*, 212 Ill. 2d at 278 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Testimony from one credible eyewitness can provide proof beyond a reasonable doubt to sustain a conviction. *People v. Smith*, 185 Ill. 2d 532, 541, 708 N.E.2d 365, 369 (1999). Specifically, when a conviction rests "on eyewitness testimony, a reviewing court must decide whether, in light of the record, a fact finder could reasonably accept the testimony as true beyond a reasonable doubt." *Cunningham*, 212 Ill. 2d at 279. But in applying this standard, we will neither reweigh evidence nor judge witness credibility; rather, we defer to the fact finder's credibility determinations. See *Smith*, 185 Ill. 2d at 542.

¶ 22        To prove defendant guilty of armed violence as charged, the State had to show defendant committed the offense of intimidation while carrying or otherwise armed with a handgun. See generally 720 ILCS 5/33A-2 (West 2016); Illinois Pattern Jury Instructions, Criminal, No. 11.52Y (4th ed. 2000). To prove intimidation, the State had to show (1) "the

defendant communicated to F.N. a threat to, without lawful authority inflict physical harm on F.N." and (2) by the threat "defendant *** intended to cause F.N. to perform an act." See generally 720 ILCS 5/12-6 (West 2016); Illinois Pattern Jury Instructions, Criminal, No. 11.42 (4th ed. 2000). Defendant claims the evidence did not establish he communicated a threat to F.N. or intended to coerce F.N. to perform a sex act. Defendant reasons that since F.N. did not testify she said "no" to his request for oral sex and since she failed to testify he pointed the gun directly at her, there was no proof he intended to force her to perform an act. These points are red herrings. The State was not required to prove such specific details to secure the conviction because those facts were not necessary to constitute the crime. *Cunningham*, 212 Ill. 2d at 278.

¶ 23    In simplest terms, "intimidation requires (1) that a threat be communicated (2) with the specific intent to coerce another to do [or not do] something against his will." *People v. Casciaro*, 2015 IL App (2d) 131291, ¶ 84, 49 N.E.3d 39. "The means or method used to communicate the threat is not an essential element of intimidation," meaning a threat can be conveyed in many ways either verbally or non-verbally. *Casciaro*, 2015 IL App (2d) 131291, ¶ 85. And more importantly, the State need not prove a specific means or method was used in communicating the threat. Likewise, the victim need not respond to the threat verbally but could respond nonverbally. Indeed, for the coercion element, the communicated threat need only arouse fear or apprehension in the victim. *Casciaro*, 2015 IL App (2d) 131291, ¶ 85 (explaining "the victim must fear that the maker of the threat will carry it out").

¶ 24    The State presented evidence through F.N.'s testimony that defendant asked her to perform oral sex. She did not respond verbally but left the room. When she returned, she saw defendant had conspicuously placed a shirt over his lap and right hand. When she removed the shirt, she could see defendant was holding a handgun next to his penis, and she began crying.

Her exclamation coupled with moving away evinced her threatened state of mind. When she tried to get away from defendant, he grabbed her, and she said, "No. No. No," during the struggle. Defendant's reaction by grabbing her as she attempted to move away from him further evinces his intentions. In our view, based on this evidence, any rational fact finder could conclude defendant communicated a threat of physical harm to F.N. by holding a loaded gun as he did, which aroused fear in F.N.—evidenced by her crying and trying to get away. Despite defendant's argument, we find no import in the fact F.N. did not expressly say "no" to defendant's request. Furthermore, any rational fact finder could conclude defendant intended to coerce F.N. to perform oral sex since he only brandished the gun after she did not immediately submit to his request for oral sex. See *Cunningham*, 212 Ill. 2d at 278. Defendant's reply brief contends, "[a] reasonable jury could have concluded [defendant] introduced the firearm not as a threat, but instead as a form of sexual role-playing or as part of a fetish." That is possible, a reasonable jury *could have* arrived at such conclusions. But based on these facts, a rational jury could also have concluded that defendant communicated a threat to coerce F.N. to perform oral sex against her will—as this jury did. See *Casciaro*, 2015 IL App (2d) 131291, ¶ 84.

¶ 25    This case came down to credibility. Even though F.N. had a criminal history and she gave inconsistent statements to police—which the defense highlighted during trial—the jury must have believed F.N.'s in-court testimony and not the defense's theory that F.N. set-up defendant. By observing F.N.'s testimony firsthand, the jury sat in a prime position to judge her credibility because it could watch her demeanor and see how she addressed conflicts or inconsistencies in her testimony. *People v. Curtis*, 296 Ill. App. 3d 991, 999, 696 N.E.2d 372, 378 (1998). F.N.'s testimony alone was sufficient evidence for the armed violence conviction. See *Smith*, 185 Ill. 2d at 541 ("The testimony of a single witness, if it is positive and the witness

credible, is sufficient to convict."). We conclude, "in light of the record," the jury "could reasonably accept [F.N.'s] testimony as true beyond a reasonable doubt" in order to find defendant guilty. *Cunningham*, 212 Ill. 2d at 279. We affirm the armed violence conviction.

¶ 26                                    B. Prosecutorial Misconduct

¶ 27        Defendant next alleges the assistant state's attorney committed prosecutorial misconduct by making improper statements during closing argument. He identified these statements:

> "Things are going fine until they weren't and until he asked for something that [F.N.] didn't want to give. He asked [F.N.] to perform oral sex on him. That was not something she was interested in doing, at least not at that moment. So, as she has the right to, she said no. The defendant apparently didn't appreciate [F.N.] exercising that right to say no.
>
> * * *
>
> The gun only is displayed after she says no. What other purpose is there for him to get a gun out after she says no? There is no other purpose. He has the gun in an attempt to force her to perform oral sex on him. That's what the gun is for. No other reasonable explanation."

Defendant contends these statements proved improper because F.N. never testified she said "no" to defendant's request for oral sex. We disagree.

¶ 28        As a threshold matter, we note defendant forfeited this issue because he failed to object to these statements during the State's closing argument and did not raise them in either

posttrial motion. He must now establish the statements amounted to plain error. "The plain-error rule bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error ***." *People v. Thompson*, 238 Ill. 2d 598, 613, 939 N.E.2d 403, 413 (2010). Defendants can invoke the plain-error doctrine when they make one of two showings:

> " '(1) a clear and obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *Thompson*, 238 Ill. 2d at 613 (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 410-11 (2007)).

Under either prong, "[t]he first step of plain-error review is determining whether any error occurred." *Thompson*, 238 Ill. 2d at 613. We find no error in the State's comments during closing arguments.

¶ 29 "Prosecutors are afforded wide latitude during closing argument and may properly comment on the evidence presented and reasonable inferences drawn from that evidence ***." *People v. Marzonie*, 2018 IL App (4th) 160107, ¶ 47, 115 N.E.3d 270. For example, "[a]rguments and statements based upon facts in evidence or upon legitimate inferences from such evidence are not outside the bounds of proper argument." *People v. Rushing*, 192 Ill. App. 3d 444, 454, 548 N.E.2d 788, 794 (1989). Statements during closing argument are improper and amount to error "only when they cause substantial prejudice to the defendant." *Marzonie*, 2018

IL App (4th) 160107, ¶ 48. We can find substantial prejudice if the improper remarks were a " 'material factor' " in a defendant's conviction. *People v. Thompson*, 2013 IL App (1st) 113105, ¶ 79, 997 N.E.2d 681 (quoting *People v. Wheeler*, 226 Ill. 2d 92, 123, 871 N.E.2d 728, 745 (2007)). In order to find such remarks to have been a material factor, we would have to conclude (1) a jury could have reached a contrary verdict had the improper remarks not have been made or (2) we cannot say the prosecutor's improper remarks did not contribute to defendant's conviction. See *People v. Kallal*, 2019 IL App (4th) 180099, ¶ 35, 129 N.E.3d 621. We find neither to be the case. Here, the assistant state's attorney's statements indicating F.N. "said no" were based on the evidence and the reasonable inferences drawn from that evidence. F.N. testified she did not acquiesce to defendant's demand for oral sex. When he asked, she left the room. When F.N. returned and saw defendant holding a gun she began crying and ran away from him—certainly not indicators she wanted to engage in more sexual activity. And as the two struggled, all F.N. could say was, "No. No. No." The assistant state's attorney's statements suggesting F.N. told defendant "no" related to the evidence presented and legitimate inferences from the evidence. Moreover, the comments did not cause defendant substantial prejudice. As we explained *supra*, the State did not need to establish that F.N. verbally said "no" to defendant's request for oral sex in order to prove him guilty beyond a reasonable doubt because her saying "no" was not an essential element of the charged crimes. See *Cunningham*, 212 Ill. 2d at 278. Further, the jury was instructed, both at the beginning of closing arguments, as well as after they were completed, that closing arguments were not evidence and should not be considered as such. The State's comments, therefore, did not pass the bounds of proper argument and did not amount to error, let alone plain error.

¶ 30                                    C. Ineffective Assistance of Counsel

¶ 31 Defendant alleges his trial counsel's decisions not to object to improper statements made during the State's closing argument and not to move to sever the status offenses (unlawful use of a weapon by a felon and being an armed habitual criminal) from the occurrence offenses amounted to ineffective assistance of counsel. We disagree.

¶ 32 The Illinois and United States Constitutions guarantee criminal defendants the right to counsel, and the latter mandates, " 'the right to counsel is the right to the effective assistance of counsel.' " *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)); U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. When presented with a defendant's ineffective-assistance-of-counsel claim, we apply the well-established, two-part *Strickland* test. The defendant must prove: (1) counsel rendered deficient performance, meaning counsel's representation fell below an objective standard of reasonableness as gauged by prevailing professional norms, and (2) counsel's deficient performance prejudiced the defendant, *i.e.*, but for counsel's errors, the result of the proceeding would have been different. See *People v. Young*, 341 Ill. App. 3d 379, 383, 792 N.E.2d 468, 472 (2003) (citing *Strickland*, 466 U.S. at 687); *People v. Peck*, 2017 IL App (4th) 160410, ¶ 26, 79 N.E.3d 232. When assessing the deficient performance prong, "a court must indulge a strong presumption that the challenged action, or inaction, was the result of sound trial strategy." *People v. Poole*, 2012 IL App (4th) 101017, ¶ 10, 972 N.E.2d 340. If a defendant fails to prove deficient performance, the court need not consider the prejudice prong, and vice versa. *People v. Torres*, 228 Ill. 2d 382, 395, 888 N.E.2d 91, 100 (2008); *People v. Graham*, 206 Ill. 2d 465, 476, 795 N.E.2d 231, 238 (2003).

¶ 33 1. *Failure to Object During Closing Arguments*

¶ 34 Defendant contends "trial counsel performed deficiently" by not objecting "to the State's asserting it had presented incriminating evidence that it did not in fact present," namely F.N. answering "no" to defendant's request for oral sex. As we explained above, the assistant state's attorney's comments related to facts in evidence and did not amount to improper statements. It is disingenuous to argue the comment by the State amounted to an affirmative assertion of specific incriminating evidence which was false. This was a comment on the evidence the jury heard, not a false claim of evidence which never existed. We cannot say counsel performed deficiently by deciding against objecting to proper comments during closing argument. Put differently, counsel's decision to not object was reasonable considering prevailing professional norms. *Young*, 341 Ill. App. 3d at 383.

¶ 35 2. *Failure to Move to Sever the Status Offenses*

¶ 36 Defendant next contends his trial attorney rendered ineffective assistance by not moving to sever the unlawful use of a weapon by a felon and being an armed habitual criminal counts from the other counts. Specifically, defendant urges that "[h]ad counsel filed a motion to sever the gun charges from the threat-related charges, the trial court would have granted the motion." Defendant believes counsel's decision to stipulate to his status as a habitual criminal, rather than move to sever the charge, amounted to deficient performance that prejudiced him because it allowed the jury to hear the defendant was a habitual criminal under Illinois law. We disagree.

¶ 37 We must note first that Illinois law allows for motions for severance, whereby:

"If it appears that a defendant or the State is prejudiced by a joinder of related prosecutions or defendants in a single charge or by joinder of separate charges or defendants for trial the court may

- 14 -

order separate trials, grant a severance of defendants, or provide

any other relief as justice may require." 725 ILCS 5/114-8(a)

(West 2016).

We observe the statute gives trial courts discretion in deciding whether to grant a motion for severance—they "*may*" grant relief. Accordingly, we cannot share defendant's absolute belief that the trial court would have granted a motion for severance here had defense counsel filed one. We can only note there would have been case law to support granting the motion. See *People v. Edwards*, 63 Ill. 2d 134, 140, 345 N.E.2d 496, 499 (1976) (holding the trial court abused its discretion in denying defendant's motion to sever armed robbery and unlawful use of a weapon charges because "joinder *** created such a strong possibility that defendant would be prejudiced in his defense"); *People v. Strong*, 215 Ill. App. 3d 484, 486, 574 N.E.2d 1271, 1272-73 (1991) (applying *Edwards* in reversing trial court's denial of defendant's motion for severance).

¶ 38        To secure a conviction on the armed habitual criminal count, the State had to prove two facts: (1) "That the defendant possessed a firearm; and (2) That when the defendant possessed a firearm he was a habitual criminal." The State could have proved the second element (defendant's status) by introducing evidence showing defendant had been convicted of "the offense of delivery of a controlled substance, class 2 felony in McLean County case number 2005-CF-960 and delivery of a controlled substance, class 2 felony, in McLean County case number 2001-CF-191." Rather, the State and defense counsel agreed to the following stipulation, which the court read to the jury: "That on April 8, 2018, the defendant was a habitual criminal under Illinois Statutes." Though this stipulation prevented the State from naming defendant's qualifying offenses, it allowed it to prove defendant guilty by showing beyond a reasonable

doubt that he possessed a firearm on April 8, 2018. Defendant argues trial counsel rendered ineffective assistance by opting to stipulate to his status as a habitual criminal rather than move to sever the status offenses from the occurrence offenses. Believing it controls our decision here, defendant directs our attention to *People v. Utley*, 2019 IL App (1st) 152112, 142 N.E.3d 352.

¶ 39 The defendant in *Utley* faced charges of possession of a controlled substance with intent to deliver, being an armed habitual criminal, and unlawful use of a weapon by a felon. *Utley*, 2019 IL App (1st) 152112, ¶ 1. Defense counsel there did not move to sever the gun counts from the drug counts and tried them all together in one proceeding. Counsel also failed to try to limit what the State could introduce to prove-up Utley's prior offenses by either filing a motion *in limine* or stipulating to the predicate felonies. *Utley*, 2019 IL App (1st) 152112, ¶ 48. Utley appealed, arguing trial counsel provided ineffective assistance by not moving to sever the charges. The State countered by "contend[ing] that defense counsel's decision not to move to sever the charges should be seen as trial strategy." *Utley*, 2019 IL App (1st) 152112, ¶ 43. The First District agreed with Utley, concluding counsel's failure to file a motion for severance constituted deficient performance because "nothing in the record" suggested "counsel's inaction may have been a matter of sound trial strategy." *Utley*, 2019 IL App (1st) 152112, ¶ 48. The court then determined counsel's error prejudiced Utley because it allowed the jury to hear about his prior drug and weapons convictions—"the same type items of contraband in this case." *Utley*, 2019 IL App (1st) 152112, ¶ 52. The *Utley* court, however, limited its holding to those specific facts and circumstances. *Utley*, 2019 IL App (1st) 152112, ¶¶ 48, 53.

¶ 40 We see defendant's comparison of his case to *Utley* as inapt because factual distinctions make its legal conclusions unpersuasive here. Unlike the defense counsel in *Utley*, counsel here tried to minimize the prejudice to defendant in lieu of filing a motion to sever. In

July 2018, defense counsel filed a motion *in limine* acknowledging "the prosecution may seek to introduce Defendant's prior criminal record" but asking "that any prior adjudications or convictions be evaluated for proper admission and limited use in the *** trial." Following a hearing, the trial court allowed defendant's motion *in limine*. And unlike the counsel in *Utley*, defendant's trial counsel stipulated defendant was a habitual criminal, thereby preventing the State from naming the predicate felonies. The mere fact counsel discussed a stipulation which was ultimately presented to the court is some indication counsel weighed the options and, as a matter of trial strategy, chose what he considered to be the best course for defendant. He ultimately said as much. These factual differences between this case and *Utley* prove significant to our analysis, especially since *Utley* is limited to its specific facts. The *Utley* court's deficient-performance determination was based on defense counsel's inaction—not filing a motion for severance, not filing a motion *in limine*, and not stipulating the predicate felonies. The court concluded that counsel's decision to do nothing to decrease prejudice to the defendant could not have been the product of sound trial strategy. *Utley*, 2019 IL App (1st) 152112, ¶ 48. Based on the specific facts here, we cannot arrive at the same conclusion.

¶ 41        We see *People v. Fields*, 2017 IL App (1st) 110311-B, 75 N.E.3d 503, as the apt comparison here. There, the State charged the defendant with armed robbery and being an armed habitual criminal. *Fields*, 2017 IL App (1st) 110311-B, ¶ 1. Defense counsel, like here, did not move to sever the charges but opted instead to file a motion *in limine* to bar admission of prior convictions for armed robbery and unlawful use of a weapon and also stipulated "to the fact that [the defendant] had two qualifying prior convictions, without specifying the exact nature of those convictions." *Fields*, 2017 IL App (1st) 110311-B, ¶ 4. In so doing, that attorney "pursue[d] an 'all or nothing' trial strategy, in which the defendant is acquitted or convicted of all charges in a

single proceeding." *Fields*, 2017 IL App (1st) 110311-B, ¶ 28. The *Fields* court held the "defendant has failed to overcome the strong presumption that defense counsel's action or inaction might have been the product of sound trial strategy," and thus, the defendant "did not receive ineffective assistance of counsel." (Internal quotation marks omitted.) *Fields*, 2017 IL App (1st) 110311-B, ¶ 28.

¶ 42    Considering the facts before us, counsel filing a motion *in limine* and stipulating to defendant's status, we find this case akin to *Fields* not *Utley*. Moreover, counsel here labeled his decision to stipulate to defendant's status as a "tactic," "so that the jury doesn't hear the specifics of what the prior offenses were." And case law suggests counsel's strategic decision was objectively reasonable considering prevailing professional norms. See *People v. Davis*, 405 Ill. App. 3d 585, 597, 940 N.E.2d 712, 724 (2010) (finding no ineffective assistance of counsel and explaining, "where a defendant's status as a felon is an element of the offense, a stipulation to his prior felony conviction is the least prejudicial means of introducing the evidence to the trier of fact"); *Fields*, 2017 IL App (1st) 110311-B, ¶¶ 23-28.

¶ 43    "[A]lthough it may [have] prove[d] unwise in hindsight," we conclude counsel's decision to stipulate to defendant's status rather than move to sever the status offenses from the occurrence offenses, amounted to "a matter of trial strategy." *Poole*, 2012 IL App (4th) 101017, ¶ 10. Defendant, therefore, cannot overcome the strong presumption that counsel acted strategically rather than deficiently. See *Poole*, 2012 IL App (4th) 101017, ¶ 10. In sum, we conclude counsel's decision against moving for severance did not constitute deficient performance. Since defendant failed to show counsel performed deficiently, we need not consider *Strickland*'s prejudice prong. *Torres*, 228 Ill. 2d at 395.

¶ 44                    D. *Krankel* Inquiries

¶ 45    Finally, defendant argues the trial court erred by refusing to appoint new counsel after *Krankel* inquiries into defendant's ineffective-assistance-of-counsel claim relating to potential defense witnesses Chad Wheeler and Carsell Jackson. We disagree.

¶ 46    When a defendant raises the issue of trial counsel's effectiveness in a posttrial motion, the trial court must hold a *Krankel* hearing, where it inquiries into the factual bases for defendant's claims. The court's inquiry may include: "(1) questioning the trial counsel, (2) questioning the defendant, [or] (3) relying on its own knowledge of the trial counsel's performance in the trial." *People v. Peacock*, 359 Ill. App. 3d 326, 339, 833 N.E.2d 396, 407 (2005). If the court finds "possible neglect of the case," then the court should appoint new counsel to investigate the defendant's claims and represent the defendant in a new hearing on the ineffective-assistance-of-counsel claims. *People v. Moore*, 207 Ill. 2d 68, 78, 797 N.E.2d 631, 637 (2003). But "[i]f the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion." *Moore*, 207 Ill. 2d at 78. We will not disturb "[t]he trial court's decision to decline to appoint new counsel *** unless the decision is manifestly erroneous." *People v. McCarter*, 385 Ill. App. 3d 919, 941, 897 N.E.2d 265, 285 (2008). "Manifest error is that which is 'clearly evident, plain, and indisputable.' " *People v. Johnson*, 206 Ill. 2d 348, 360, 794 N.E.2d 294, 303 (2002) (quoting *People v. Ruiz*, 177 Ill. 2d 368, 384-85, 686 N.E.2d 574, 582 (1997)).

¶ 47    Here, defendant twice informed the trial court that he believed he was receiving ineffective assistance of counsel based on his attorney's decision not to interview or call Chad Wheeler or Carsell Jackson as defense witnesses. Defendant told the court he informed counsel of two potential witnesses, Chad Wheeler and Carsell Jackson, who could testify to F.N.'s prior drug use or her prior false claims of sexual abuse.

¶ 48     As for Chad Wheeler, defense counsel responded: "Well, having just received Mr. Wheeler's name yesterday in a conversation with my client, *** I had a few brief minutes to look at Mr. Wheeler[.]" In that short time, counsel learned Wheeler was in custody facing drug charges. Counsel informed the court he "inquired of Mr. Wheeler's counsel," who said, "[h]e was within 30 days of a plea. So he's technically represented by someone within the Public Defender's office. I inquired of that attorney and was told with what I expected was that to [sic] —that the attorney did not want me discussing their client's drug use while they have cases around." Ultimately, defense counsel explained he did not use Wheeler as a witness because Wheeler's counsel prevented it, Wheeler was not an occurrence witness, and Wheeler would have to testify in a jail jumpsuit.

¶ 49     As for Carsell Jackson, counsel responded:

> "Similarly situated to the other individual, Your Honor. I received the actual name yesterday and had a visit with my client ***.
>
> * * *
>
> Also similarly situated, Mr. Jackson is in custody ***. He is pending prosecution in 18-CF-212. So, again he has counsel. He's represented by Matt Koetters, who is an assistant public defender. I talked to Mr. Koetters and, again, received the response that— indicating that Mr. Koetters did not want me to talking to his client about potential drug use with somebody else, particularly when his client has a pending case."

Counsel said he decided not to pursue Jackson as a witness for the same reasons he did not pursue Wheeler: Jackson's counsel prevented it, Jackson had minimal probative evidence, and Jackson would have to testify in a jail jumpsuit.

¶ 50    The trial court credited counsel's explanations, explaining to defendant how "both [Wheeler and Jackson] have been—attempted to be contacted through their attorneys who have told Mr. Lewis that they do not want him speaking to their clients." The court went on to say, "And so from that perspective, it appears that he has investigated those witnesses as to whether or not they would be able to be called. And then he's further indicated the reasons why—trial strategy, why he would not be calling them as witnesses in this case." The court then provided defendant the opportunity to talk with counsel privately, which he did. Following a brief recess, defendant returned to the courtroom and said, "Me and Mr. Lewis we talked and we're fine and we want to proceed with trial as set." The court clarified: "So you want to keep the trial set for this coming Monday?" And defendant answered, "Yes, sir." With that, the trial court terminated the *Krankel* hearing.

¶ 51    Defendant raised the same ineffective-assistance claim after trial—he had "two potential witnesses that can attest to [F.N.'s] drug usage." The trial court reminded defendant, "We addressed this issue on July 12th," when it "found no neglect occurred" because "the attorneys would not allow those witnesses to speak to Mr. Lewis." The court further explained it "found no [in]effective assistance of counsel on this issue relating to these two witnesses. So once again I'm finding that there is no neglect on the part of Mr. Lewis on these two matters and it was a matter of trial strategy to proceed."

¶ 52    We see no error, let alone manifest error, in the trial court's decision against appointing new counsel to investigate defendant's claims relating to these witnesses. Looking at

this record, we see no " 'clearly evident, plain, and indisputable' " error. *Johnson*, 206 Ill. 2d at 360 (quoting *Ruiz*, 177 Ill. 2d at 384-85). In fact, the record confirms there was no possible neglect on counsel's part. He informed the court that he looked up Wheeler and Jackson and quickly learned they were non-starters as witnesses. Both were incarcerated. Their attorneys would not let them speak about their drug use. And neither man had personal knowledge of the events between defendant and F.N. on April 8, 2018. Based on this and other information, counsel made the strategic decision not to pursue these men as witnesses for the defense, which does not amount to ineffective assistance. See *People v. Brown*, 2018 IL App (4th) 160288, ¶ 47, 115 N.E.3d 408 ("[D]ecisions as to which witnesses to call or what evidence to present are viewed as matters of trial strategy and 'generally immune from claims of ineffective assistance of counsel.' " (quoting *People v. West*, 187 Ill. 2d 418, 432, 719 N.E.2d 664, 673 (1999))). Since defendant's ineffective assistance claims related to matters of trial strategy, the court rightly declined to appoint new counsel. See *Moore*, 207 Ill. 2d at 78.

¶ 53                                      III. CONCLUSION

¶ 54            For the reasons stated, we affirm the trial court's judgment.

¶ 55            Affirmed.