2024 IL App (1st) 230251-U

No. 1-23-0251

Order filed May 10, 2024

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 4746 |
| | ) | |
| AUGUSTINE NDIWE, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ODEN JOHNSON delivered the judgment of the court.
Justices Hyman and Tailor concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We affirm defendant's conviction for escape where the evidence was sufficient to establish that he knowingly violated a condition of the electronic monitoring program by being absent without leave from his residence.

¶ 2   Following a bench trial, defendant Augustine Ndiwe was found guilty of escape from electronic monitoring and sentenced to two years in prison. On appeal, defendant argues the evidence was insufficient to prove beyond a reasonable doubt that he knowingly violated his electronic monitoring agreement. We affirm.

¶ 3    Defendant was charged by indictment with one count of escape for failure to comply with a condition of the electronic home monitoring detention program (730 ILCS 5/5-8A-4.1(a) (West 2018)) for allegedly being absent without leave from the residence designated in his electronic home monitoring agreement on March 30, 2019. The record reflects that defendant had been placed on pretrial electronic monitoring as a condition of bond while waiting for trial on vehicular invasion and aggravated battery charges. On March 29, 2019, defendant did not appear at a hearing in that case and a bond forfeiture warrant issued for his arrest.

¶ 4    At trial, John Webb, director of the Cook County Sheriff's Electronic Monitoring Unit, Fugitive Investigation Section, testified that he had tested electronic monitoring equipment at least 100 times to ensure it worked properly. On March 30, 2019, electronic monitoring devices used radio frequencies. An ankle bracelet would send radio frequencies to a home monitoring receiving unit (box) inside a residence and the box would send information to a monitoring center in Aurora, Illinois.[1] Every four hours, the box would contact the monitoring center and confirm everything was functioning properly. If something was not functioning properly, a "missed call" signal would be sent.

¶ 5    Webb explained that the ankle bracelet would usually send 15 to 25 radio frequency pulses per minute to the box from within a distance of approximately 150 feet. When the ankle bracelet was not detected for over a minute, a curfew alert would generate and the box would contact the monitoring center and show a curfew alarm. An ankle bracelet that sent only one pulse per minute would not trigger a curfew alarm. After 30 minutes of receiving a curfew alert, the monitoring

---

[1] Webb explained that at the time of trial, the department used GPS electronic monitoring devices.

center would typically contact the individual on house arrest. If the house arrestee was absent without leave, that determination would be investigated and reviewed.

¶ 6    The State introduced defendant's electronic monitoring participant contract and responsibility agreement. Webb reviewed the documents and noted the contract and agreement mandated defendant remain at his assigned residence 24 hours a day unless prior approval was granted by the sheriff's office. Defendant did not have authorized leave on March 30, 2019. The State also introduced an event history from defendant's electronic monitoring records. Webb reviewed that document and concluded the box in defendant's home was working properly as there were no missed calls. The box detected two curfew violations that day.

¶ 7    The first violation showed defendant left his residence at 2:32 p.m., a curfew violation was reported at 3:02 p.m., and he returned at 4:02 p.m. The second violation, which is at issue here, showed defendant left his residence at 6:28 p.m., a curfew violation was reported at 6:58 p.m., and he returned at 7 p.m. The curfew violation would clear when the individual returned within 150 feet of the box. Webb testified he had worked on "thousands and thousands" of cases overseeing electronic monitoring equipment and of the nearly 100 times he investigated curfew violations where a defendant stated the box was not working properly, he never found that to be the case.

¶ 8    On cross-examination, Webb testified he went to defendant's residence after March 30, 2019, but did not enter or know where the box was located. In 2019, an ankle bracelet would send a radio frequency to the box and the box would signal the monitoring center through "telephone wires or *** cellphone or monitoring." Once the monitoring center received an alert, someone at the center would try to contact the electronic monitoring participant. If that failed, the monitoring center would contact the electronic monitoring unit at the Cook County Sheriff's Office.

¶ 9    Webb stated that a box would run diagnostics every 4 hours, but the overall monitoring system would run diagnostics "all day long 24 hours a day." When a box was not working properly, a "different type of alarm" would indicate that something was not right. Webb did not see anything that indicated the box in defendant's home was not working properly. Webb clarified that when the system indicated a curfew violation, that meant that the ankle bracelet was not within 150 feet of the box and continuously so for at least 30 minutes. The 150 feet radius accounted for the electronic monitoring participant's ability to "go next door" or "into their garage." Basements or concrete walls could interfere with the signals sent from an ankle bracelet to the box, but the 30-minute window was in place to verify the electronic monitoring participant was actually gone. In Webb's experience, the "standard line" that most people gave was that the box was not working.

¶ 10    On redirect examination, Webb testified that defendant's home measured "approximately 32 feet wide, 140-150 feet wide or long." Had defendant entered the backyard or garage, an alarm should not have triggered, because he would have had to have been "more than at least a house away" in either direction. The ankle bracelets transmitted signals through brick, plaster walls, and drywall, and worked anywhere within a normal single-family residence. Of all the equipment Webb tested, none of the frequencies had been blocked by "any materials." On recross-examination, Webb confirmed that while inspecting boxes, he had moved boxes in the past from one place to another to improve signal reception.

¶ 11    Investigator Keith of the Cook County Sheriff's Office Electronic Monitoring Unit testified that he and his partner, Investigator Nichols, went to defendant's residence on March 30, 2019, between 5:30 p.m. and 6:30 p.m. to follow up on a bond forfeiture warrant.[2] Keith described the

---

[2] Neither Investigator Keith's nor Investigator Nichols' first names appear in the record.

home as small, about 10-15 feet wide and 30 feet long. Nichols rang the doorbell and knocked on the front door, while Keith stayed close to the sidewalk in order to "see somebody coming from the side of the house." When no one responded, Keith used a handheld device in order to detect defendant's ankle bracelet to determine if he was in the home or in the area. The device used the same radio frequency as the box placed inside the home. Keith testified the device did not detect defendant's ankle bracelet, or any ankle bracelet, in the home and so he assumed that defendant was not present.

¶ 12    Keith proceeded to the side of the home and knocked on the door and a window, to no answer. He also went to the back of the home to the garage, which had a vehicle in it. No one was in the garage. Keith returned to the front of the home and Nichols made the notifications declaring defendant absent without leave.

¶ 13    The State published Keith's body-worn camera (BWC) video. This court has viewed the BWC video, which is included in the record on appeal. In the footage, Keith and Nichols arrive at defendant's residence at 6:26 p.m. per a time stamp. At 6:27 p.m., the officers approach the door. The officers knock on the front door, side door, and windows, as well as ring the doorbell multiple times to no reply. Keith can be seen activating a handheld device.

¶ 14    On cross-examination, Keith clarified that defendant was detected leaving by the monitoring unit in defendant's home at 6:28 p.m. Keith did not see defendant leave and would have seen defendant had he left while Keith and Nichols were knocking on the front door. No lights were on in the home, no one could be seen from the outside, and Keith did not hear any doors open. Keith did not know the exact dimensions of the home, whether it had a basement, or

where the basement was in relation to the front door. Keith did not announce himself as an officer when he knocked on the door, but believed Nichols announced when he knocked.

¶ 15    On redirect examination, Keith testified that he and Nichols parked on the street and waited about one minute before going to the door and knocking. While waiting on the sidewalk in the front of the home, Keith could not see through the wooden gate that went around the side to the back of the home. He opened the wooden gate about five minutes after waiting at the front of the home.

¶ 16    The parties stipulated to summaries of court transcripts from March 27, 2019, March 29, 2019, April 2, 2019, and April 11, 2019, all pertaining to the underlying case for which defendant was on electronic monitoring and the bond forfeiture warrant.

¶ 17    Defendant testified that he was diagnosed with depression, anxiety, and PTSD from his service in the army and was prescribed oxycodone and naproxen as sleep aids and Prozac for PTSD. He took oxycodone as needed, and when he took it, he would enter a "deep sleep" for five to six hours.

¶ 18    Electronic home monitoring was a condition of bond for defendant's January 2019 case. He signed an electronic monitoring agreement, and the box was placed in the basement of his home. On the night of March 29, 2019, defendant slept "maybe an hour [and] 30 minutes." On March 30, he took oxycodone at around 3 p.m. and was in a deep sleep with the television on in the basement until around 8:30 p.m. He did not hear the knocks on his door during that time. In April 2019, after his bond was reinstated, officers came to his home to reposition the box to the first floor because the box in the basement "wasn't receiving enough signal."

¶ 19 On cross-examination, defendant clarified the box was in the basement about two feet from his bedroom. He was first prescribed his medications in 2017, on an as-needed basis, and was not prescribed a specific amount or number of times to take the medications. He had his ankle bracelet on when he went to sleep on March 30.

¶ 20 During closing argument, defense counsel argued that defendant was a veteran who experienced trauma in war and could not sleep at night due to flash backs of losing his fellow soldiers. Defendant took oxycodone as needed to get five or six hours of rest. The trial court interrupted, stating that was a "pain med, not a sleeping med." Counsel explained that oxycodone was prescribed for sleep. The court responded, "[a]ll right. Go ahead. Continue with the argument, please." Counsel argued that defendant was asleep in his bed when officers arrived on March 30 and he turned himself in two days later.

¶ 21 The trial court found defendant guilty of escape from electronic monitoring. The court found defendant was "completely noncompliant" with the terms of his electronic monitoring that was a condition of bond. The court did not believe defendant was sleeping when officers knocked on the door; rather, defendant "wasn't home."

¶ 22 The court sentenced defendant to two years in prison. Defendant filed an amended motion for a new trial and made an oral motion to reconsider his sentence, which were denied.

¶ 23 On appeal, defendant challenges the sufficiency of the evidence establishing that he knowingly violated his electronic monitoring agreement. Defendant asserts that there was no proof that he left his home.

¶ 24 In considering a challenge to the sufficiency of the evidence, the relevant inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This court will not retry the defendant. *People v. Nere*, 2018 IL 122566, ¶ 69. The trier of fact's role is to "assess the credibility of the witnesses, weigh the evidence presented, resolve conflicts in the evidence, and draw reasonable inferences from the evidence." *People v. Daniel*, 2022 IL App (1st) 182604, ¶ 102. A reviewing court will not substitute its judgment for that of the trier of fact with respect to those issues. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009).

¶ 25 The trier of fact need not "disregard inferences that flow normally from the evidence before it" or "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 70. Therefore, we "must allow all reasonable inferences from the record in favor of the prosecution." *People v. Givens*, 237 Ill. 2d 311, 334 (2010). A conviction will not be set aside unless "the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Bradford*, 2016 IL 118674, ¶ 12.

¶ 26 To find defendant guilty of escape from electronic monitoring as charged, the State needed to prove that defendant "knowingly violate[d] a condition of the electronic monitoring or home detention program." 730 ILCS 5/5-8A-4.1(a) (West 2018).

¶ 27 Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found defendant guilty of escape. Defendant's electronic monitoring agreement mandated that he remain at his residence 24 hours a day unless the sheriff's office granted prior approval. Defendant did not have authorized approval for movement on March 30, 2019. The box in

defendant's home recorded two curfew alerts on that day, including one at 6:28 p.m., the related curfew violation at 6:58 p.m., and defendant's return at 7 p.m. The box did not have any missed calls on March 30 that would signal that the box was not working properly, and Webb did not see any indication that the box was not working properly in his review of the electronic monitoring documents pertaining to defendant's case.

¶ 28    Keith testified he and Nichols arrived at defendant's home on March 30 between 5:30 p.m. and 6:30 p.m. to execute the bond forfeiture warrant. They knocked on the front door and rang the doorbell, knocked on a side door and window, and checked the back of the home and garage, which were clear of individuals. Defendant did not answer. Keith then used a handheld device to detect defendant's ankle bracelet and no bracelet was detected in the home, which led him and Nichols to conclude that defendant was absent.

¶ 29    Webb's and Keith's testimony is further corroborated by the BWC video which showed Keith and Nichols knock on doors and windows in the front and the side of defendant's home. They also ring the doorbell. At no point was defendant, or anyone, seen opening the door.

¶ 30    Construing the evidence in the light most favorable to the State, we find that a rational trier of fact could find that defendant knowingly violated a condition of the electronic home monitoring program by being absent without leave from his residence on March 30. Defendant did not answer the numerous knocks and doorbells when the investigators were at his home. Further, the box in his home issued a curfew alert at 6:28 p.m., which was consistent with the finding of the handheld device detecting that defendant's ankle bracelet, or any bracelet, was not within range of the box. Electronic monitoring subsequently issued a curfew violation 6:58 p.m. and detected defendant's return at 7 p.m. Our function is not to retry defendant, nor will we substitute our judgment for that

of the trial court's with respect to the weight of the evidence presented or the credibility of Webb's and Keith's testimony. *McLaurin*, 2020 IL 124563, ¶ 22. In this case, the evidence showing that defendant was absent without leave from his residence on March 30 at 6:28 p.m. was sufficient to prove that he knowingly violated the terms of his electronic monitoring agreement. See *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004) (all reasonable inferences are viewed in the light most favorable to the prosecution). The evidence therefore was not so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of defendant's guilt of escape. *Bradford*, 2016 IL 118674, ¶ 12.

¶ 31    Nevertheless, defendant contends the State failed to prove beyond a reasonable doubt that he was absent from his home when the officers arrived to execute the bond forfeiture warrant. He argues the officers would have seen him had he left at 6:28 p.m. and they arrived at 6:26 p.m., suggesting inconsistency between the electronic monitoring records and Keith's testimony.

¶ 32    Contrary to defendant's contention, there was no apparent inconsistency between the electronic monitoring records and Keith's testimony. Keith and Nichols arrived at defendant's home at 6:26 p.m. and knocked on defendant's front door at 6:27 p.m. A curfew alert issued at 6:28 p.m. A curfew alert would issue when an ankle bracelet was not detected for over a minute within the detection range of 150 feet. For an alarm to have triggered at 6:28 p.m., defendant would have been at a distance more than a house away in either direction of his home. Therefore, even if there was an inconsistency in the aforementioned evidence as defendant purports, it was for the trial court, not this court, to resolve. *Daniel*, 2022 IL App (1st) 182604, ¶ 102.

¶ 33    Defendant also argues the evidence suggests the box inside his home was not functioning properly given his "unrefuted" testimony that he was in a "deep sleep" when the officers arrived,

as well as the fact that the box was later moved from the basement to the first floor of his home for better signal reception. We disagree.

¶ 34    In this case, the evidence fails to show the box was not functioning properly that day. Webb testified that a missed call would have issued had the box not functioned properly, and no missed call appeared on defendant's box on the date and time in question. Webb also testified that of the approximately 100 cases he investigated where a defendant claimed that the box was not working properly, he never found that to be the case. Even setting aside the box's functioning, the handheld device did not detect an ankle bracelet inside defendant's home. Defendant is requesting that we reweigh the evidence to reach a different result, which we cannot do. *People v. Reynolds*, 2021 IL App (1st) 181227, ¶ 33.

¶ 35    Although defendant asserts he was in his home at the time of the officers' arrival and in a "deep sleep," "a defendant's statement need not be believed if it is contradicted by other evidence." *People v. Ward*, 2023 IL App (1st) 190364, ¶ 95. The other evidence in this case, being Webb's and Keith's testimony, the electronic monitoring records from defendant's box, and the BWC video, contradicts defendant's version of events. The trier of fact is not required to "disregard inferences that flow normally from the evidence before it" or "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *Jackson*, 2020 IL 124112, ¶ 70. Defendant's conduct and the surrounding circumstances created a reasonable inference that he violated his electronic monitoring agreement by being absent from his residence without leave. Construing all the evidence and reasonable inferences therefrom in the light most favorable to the State, we find the evidence was sufficient to find defendant guilty of escape beyond a reasonable doubt. *Cunningham*, 212 Ill. 2d at 280.

¶ 36    As a final matter, defendant argues that there is a "strong possibility" that the trial court rejected his testimony based on its personal knowledge instead of the evidence. Specifically, defendant notes that when counsel argued in closing that defendant used oxycodone as a sleeping medication, the court interjected that oxycodone was a pain medication. This contention lacks merit. In its ruling, the court found that defendant was not home and it did not believe that defendant was sleeping. Therefore, the medication defendant used to sleep had no bearing on the court's finding of guilt as it expressly determined that defendant was not home. Accordingly, we reject defendant's claim that the trial court improperly considered personal knowledge in its ruling.

¶ 37    Although not raised by defendant, we further note that defendant's violation of a condition of his pretrial release under the escape statute is a Class 3 felony (730 ILCS 5/5-8A-4.1(a) (West 2018)), which requires a mandatory sentence of between two and five years (730 ILCS 5/5-4.5-40 (West 2018)). This is so, even though he has not yet been convicted of the underlying offense and despite the recent adoption of the Pretrial Fairness Act in September 2023.[3] The current version of the escape statute does not distinguish between individuals who are on pretrial electronic home monitoring and those who may be on such monitoring after a conviction.

¶ 38    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 39    Affirmed.

---

[3] In 2021, the General Assembly passed two separate acts that "dismantled and rebuilt Illinois's statutory framework for the pretrial release of criminal defendants." *Rowe v. Raoul*, 2023 IL 129248, ¶4 (discussing Pub. Act 101-652, § 10-255, 102-1104, § 70 (eff. Jan. 1, 2023) (amending 725 ILCS 5/art. 110) (the Pretrial Fairness Act) and Pub. Act 102-1104 (eff. Jan. 1, 2023) (the Follow-Up Act).